[No. 9427.  Department One.  June 1, 1911.]

H. J. GIELENS *et al.*, *Respondents*, v. FIDELITY TRANSFER &
STORAGE COMPANY, *Appellant*.[1]

MUNICIPAL CORPORATIONS—USE OF STREETS—NEGLIGENCE—ACTIONS
—OWNERSHIP OF WAGON. In an action for injuries sustained in a
collision with an express wagon, there is sufficient evidence that the
wagon belonged to the defendant, where it appears that the wagon
bore defendant's name, no one else operated wagons with that name,
and the driver was identified as one of defendant's drivers.

SAME—NEGLIGENT DRIVING AT CROSSING. It is negligence to drive
an express wagon rapidly over a slippery street with a load of gas
pipes protruding from the back of the wagon, and turn so abruptly
at a crossing as to cause the back part of the wagon to slide towards
a pedestrian and strike her with the pipes.

SAME—CONTRIBUTORY NEGLIGENCE. It is not contributory negli-
gence for a pedestrian to wait at a crossing for the passing of a
rapidly approaching express wagon, at a place that would be out of
danger if the wagon were normally loaded, without any notice or
reason to anticipate danger from gas pipes protruding 8 or 10 feet
from the back of the wagon.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered July 11, 1910, upon findings in
favor of the plaintiffs, after a trial on the merits before the
court without a jury, in an action for personal injuries
sustained by a pedestrian struck by an express wagon.
Affirmed.

*Wesley Lloyd*, for appellant.

*Blackburn & Gielens*, for respondents.

FULLERTON, J.—This action was brought to recover for
personal injuries suffered by the respondent Alice Gielens.
The record discloses that, at the time of the accident, Mrs.
Gielens was crossing South Ninth street, in the city of Ta-
coma, at the place of its intersection with Commerce street.
She was walking on the westerly side of Commerce street,

[1]Reported in 115 Pac. 850.

proceeding in a southerly direction, when she noticed a team hauling an express wagon coming from the west on Ninth street at quite a rapid gate. Ninth street at that place is quite steep, and the day was wet and the street slippery. Thinking it unsafe to attempt to cross ahead of the team, she stopped, after she had gotten part way across the street, and waited for the team to pass in front of her, keeping well out of the way of the track along which the team was approaching. The wagon was carrying a number of lengths of gas pipe or steel rods, which protruded from the back end of the wagon some 8 or 10 feet. As the team approached the respondent, it was turned sharply by the driver, and without any slacking of the speed, into Commerce street in the direction in which the respondent was going. As the wagon turned, the back of the wagon slid towards the respondent, swinging the pipes or rods against her, knocking her down and causing the injuries for which this action is prosecuted. The injured respondent testified that she was far enough away from the wagon to have escaped injury had the wagon been normally loaded, and that she did not discover the protruding rods until the wagon turned, too late to get out of the way of their swinging ends.

The case was tried by the lower court sitting without a jury. The court found that the team and wagon was the property of, and operated by, the appellant; that the driver of the wagon was guilty of negligence; that the injured respondent was free from negligence; and entered a judgment in her favor in the sum of $300.

The appellant questions the sufficiency of the evidence to justify the judgment entered. It contends, first, that there was no evidence that the team and wagon causing the injury was owned or operated by it. But we think the great preponderance of the evidence supports the finding of the court. Three witnesses testified that the wagon bore the name of the appellant, and its president testified that no wagons were operated in the city of Tacoma bearing that name other than

those belonging to the appellant.   Moreover, one of the witnesses testified that he knew the driver of the wagon, and that the driver had driven wagons for the appellant for some eight months prior to the time of the injury.   The testimony on the other side was of a negative nature.   The appellant produced its return sheets made by the drivers on that day, which showed that none of them reported having hauled iron pipes or rods for any person on that day.   But we do not think this conclusive, or that it overcomes the positive evidence to the contrary.   The driver might have been careless or negligent in making his report, or he might have omitted the item purposely to avoid inquiry.   On the other hand, the witnesses for the respondent were positive in their identification; in fact, one of them called up the place of business of the appellant within a short time after the accident happened and notified the president of the company of the fact.

It is next said that there was no evidence of negligence on the part of the driver.   But we think to the contrary.   He drove rapidly over a wet street with an unusual load, made an abrupt turn just as he passed the respondent, causing the back part of the wagon to slide towards her and the protruding irons to swing around and strike her. The negligence does not consist in making the turn.   The driver had a right to do that, and pedestrians must take notice of that right and of the fact that a turn may be made.   Nor does it consist in the fact alone that the load of the wagon protruded beyond the bed of the wagon.   This is permissible so far as any rule of the highway is concerned.   This condition only required more care in driving.   But here the negligence consisted in careless driving with an abnormal load.   The respondent was not bound to anticipate that the wagon was loaded in an unusual manner.   She had a right to assume that if the place at which she stood while waiting for the wagon to pass was a place of danger because of some abnormal con-

13—63 WASH.

dition of the load, the driver of the wagon would warn her of that fact, either by requesting her to stand further away or bringing the team to such a rate of speed that the danger would be avoided.

Nor was the respondent guilty of contributory negligence. On the contrary, her conduct was prudent throughout. Not only did she not attempt to cross in front of the team, although she seems to have had time to do so, but she stood sufficiently far to one side to avoid all possible injury had the conditions been such as they appeared to her to be. Her testimony is that as she looked at the approaching wagon she did not see the protruding irons; that it appeared to be an ordinary wagon with an ordinary load, driven perhaps with greater speed than prudence dictated, but yet not with recklessness. She stood on that side of the cross-street that would place her out of danger from a wagon normally loaded in case a turn was made either way into the cross-street. The only thing she did not anticipate was that the wagon carried irons protruding 8 or 10 feet from the back of the bed, and this we think she was not bound to do. The preponderance of the evidence, therefore, supports the finding of the trial judge.

It is not necessary to review the cases cited by the appellant. They state the law correctly as applied to the facts before them, but we do not find that any of them present a case with facts parallel to the facts in the case at bar.

The judgment is affirmed.

PARKER, MOUNT, and GOSE, JJ., concur.